NOT RECOMMENDED FOR PUBLICATION
File Name:  18a0203n.06

No. 17-3890

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

HASMUKHLAL GORDHANDAS PATEL,               )
                                           )
        Petitioner,                        )
                                           )
                                           )
        v.                                 )
                                           )
JEFFERSON B. SESSIONS, III, Attorney General, )
                                           )
        Respondent.                        )
                                           )
                                           )

FILED
Apr 18, 2018
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW
FROM THE UNITED STATES
BOARD OF IMMIGRATION
APPEALS

BEFORE:  GILMAN, COOK, and GRIFFIN, Circuit Judges.

        GRIFFIN, Circuit Judge.

        Hasmukhlal Gordhandas Patel petitions this court for review of the Board of Immigration

Appeals's (BIA) order dismissing his appeal from the denial of his applications for withholding

of removal under the Immigration and Nationality Act (INA), 8 U.S.C. § 1231(b)(3)(A), and

protection under the Convention Against Torture (CAT), 8 C.F.R. § 208.16.   Because Patel

abandoned his challenge to the agency's adverse credibility determination (which is nonetheless

supported by substantial evidence), and Patel's due process rights were not violated during the

proceedings, we deny the petition for review.

I.

        Patel, a native and citizen of India, entered the United States without inspection in 2011.

The Department of Homeland Security instituted removal proceedings against Patel, who

conceded removability.  Patel subsequently filed an application for relief in the form of a request

of withholding of removal under the INA and protection under the CAT. He rested both claims on the same ground—that he would be persecuted in India on account of his political opinion as a member of the ruling Bharatiya Janata Party (BJP).

Relevant here, Patel alleged in his application and affidavit that between 2008 and 2009, opposition party supporters stalked and threatened to harm him and his family, threatened to sexually assault his daughter, and had thrown stones at his home. Patel added in his affidavit that "[e]ven complaining at a police station did not stop them." Then, at his withholding hearing, Patel testified that six people on three bikes beat him with hockey sticks. Patel had no medical or other records to support this claim, but he presented a corroborating witness who described how "three or four people came in a vehicle," beat Patel with hockey sticks, and then "took [a] bike and ran away." Patel equivocated on whether he reported any of these alleged events to the police.

After the hearing, the immigration judge (IJ) denied Patel relief in a written decision. The IJ concluded that, as a threshold matter, Patel was not credible because: (1) there were "material discrepancies" between Patel's application materials and his hearing testimony; (2) Patel's hearing testimony was both "internally inconsistent" and inconsistent with that of his corroborating witness; (3) Patel gave vague descriptions of certain events "important to his claim;" and (4) he was "evasive" and "nonresponsive" throughout the hearing.

The IJ also concluded that the merits alternatively doomed Patel's claims. The IJ held that Patel was not eligible for relief under the INA because he could reasonably and safely relocate within India to avoid persecution, and he had not demonstrated "that he would be singled out for persecution . . . based on his political opinion, or that there exist[ed] a pattern or practice of persecution of similarly situated individuals" there. Nor, reasoned the IJ, was Patel

eligible for CAT protection because he could safely relocate, and he had failed to provide sufficient evidence that he had suffered any actual torture in India, or that a pattern of such human-rights violations persisted against BJP members.

On appeal, the BIA upheld the IJ's adverse credibility finding. The BIA likewise agreed with the IJ's alternative finding that Patel was not eligible for withholding of removal. The BIA explained that the IJ's relocation and past-torture determinations were not clearly erroneous, and added that the record evidence also failed to establish that Patel was likely to be tortured with the consent or acquiescence of an Indian public official or other person acting in an official capacity, as required for CAT protection. Moreover, the BIA found no merit to Patel's argument that the IJ had "behaved in a biased or unjust manner" at the hearing or had otherwise denied Patel due process. This timely petition for review followed.

## II.

Patel argues that he credibly established his eligibility for withholding of removal, and that the IJ denied him due process by failing to provide any opportunity at the hearing to explain the inconsistencies the agency relied upon to find him incredible. "Where, as here, the BIA issues its own decision rather than summarily affirming the IJ, the BIA decision is reviewed as the final agency decision, but the IJ's decision is also reviewed to the extent that the BIA adopted it." *Harmon v. Holder*, 758 F.3d 728, 732 (6th Cir. 2014).

## A.

We begin with a brief note regarding the agency's adverse credibility determination. Unless the evidence compels a contrary conclusion, we cannot reverse. *Ndrecaj v. Mukasey*, 522 F.3d 667, 675 (6th Cir. 2008). Here, although Patel generally contends that he met "his burden [of] establishing past persecution and demonstrating a nexus between the past persecution

and . . . future persecution," he did not develop a cogent argument as to why we are compelled to conclude the IJ erred by finding him incredible. We therefore deem this issue abandoned. *See, e.g.*, *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1063 (6th Cir. 2014).

And even if it were not abandoned, the BIA reasonably concluded that the "totality of the circumstances"—namely, the discrepancies between eyewitness accounts of the beating Patel allegedly suffered at the hands of opposition party supporters, Patel's omission of that incident from his application and affidavit, and his omission from his hearing testimony of any mention of the specific threat of sexual assault against his daughter alleged in his application and affidavit—supported an adverse credibility determination. Indeed, these inconsistencies and omissions "[go] to the heart of [Patel's] claim[s]" of withholding for fear of persecution on account of a political opinion. *See Liti v. Gonzales*, 411 F.3d 631, 637 (6th Cir. 2005); *see also* 8 U.S.C. § 1158(b)(1)(B)(iii). This determination is fatal to Patel's claims for relief under the INA and the CAT because both are based on the same ground. *See Slyusar v. Holder*, 740 F.3d 1068, 1073–74 (6th Cir. 2014). And because "an application deemed incredible will not be reviewed on the merits," we decline to address Patel's challenges to the BIA's adverse relocation and likelihood-of-future-persecution findings. *Id.* at 1074.

B.

Rather than attempt to explain or reconcile any of the discrepancies identified by the IJ and BIA, Patel asserts that the IJ violated his due process rights by failing to provide him an opportunity to do so at the withholding hearing. We review de novo Patel's due process allegations. *Bi Qing Zheng v. Lynch*, 819 F.3d 287, 296 (6th Cir. 2016).

The Fifth Amendment entitles aliens facing removal "to a full and fair hearing." *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001). A due process violation occurs

only "when the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Hassan v. Gonzales*, 403 F.3d 429, 436 (6th Cir. 2005) (internal quotation marks and citation omitted). The applicant must show "not only error, but also substantial prejudice." *Lin v. Holder*, 565 F.3d 971, 979 (6th Cir. 2009) (internal quotation marks omitted). Here, Patel contends in a single sentence that the IJ never "raise[d] concerns about" the discrepancies related to "reporting to the police" or to the beating, and even "stopp[ed] [him] from testifying." But the record belies any allegation that Patel had no "full and fair" opportunity to address these issues at the hearing. *See Huicochea-Gomez*, 237 F.3d at 699.

Take, for example, the IJ's and the BIA's finding that Patel took inconsistent positions on whether he reported threats to the police. During the hearing, Patel's attorney prompted him to explain why he did not want to report anything to the police. The government then questioned Patel repeatedly about whether, and what events, he reported. The government also confronted Patel with his affidavit in which he stated that he had complained to the police, but Patel gave irreconcilable responses. First, he maintained that he must have meant the BJP had filed a complaint, and then recanted and asserted that he had gone to the police himself at some point. The IJ inserted himself into this line of questioning only to ask the government to clarify a question for Patel's benefit, and to ask Patel to explain why he thought he would be arrested if he reported the hockey-stick incident to the police.

Patel was also questioned, on direct and on cross-examination, about the hockey-stick incident. He was able to explain his version of events, describe his injuries, and mention a doctor visit. He was also able to present a corroborating witness. But when the government asked Patel why he had not included the beating in his application or affidavit, Patel again gave

confused responses. Patel first asked: "What happened? What are you—which one?" The government then repeated that it was asking about the affidavit Patel had submitted with his withholding application. Patel still did not address the omission, stating vaguely that "[t]he things which ha[d] already happened in India with the affidavit which I have got a paper from India. That is what I have reported." It was only after these two failed attempts at eliciting a coherent response that the IJ admonished Patel for being nonresponsive and directed the government's attorney to ask his next question about the beating. Thus the IJ did not "prevent" Patel from testifying about the police reporting issue or the hockey-stick incident. And Patel's counsel could have revisited either topic on redirect, and sought clarification, but she did not.

Accordingly, and contrary to his assertions, Patel was afforded a reasonable opportunity at the hearing to explain these material inconsistencies. Although he faults the IJ for failing to "raise concerns" at the hearing, *Patel* bore the stringent burden of production and persuasion. *See Liti*, 411 F.3d at 640–41; *see also* 8 C.F.R. § 1208.16(b), (c)(2). Patel advances no support for the claim that *the IJ* had a duty to raise and address every possible inconsistency on an applicant's behalf. *See Jin Ju Zhao v. Holder*, 322 F. App'x 437, 440 (6th Cir. 2009) (per curiam) (upholding the IJ's adverse credibility determination where petitioner had a "fair opportunity to explain the most relevant discrepancies in the record evidence"). Nor does Patel explain how the IJ's cited attempts to actively involve himself in questioning witnesses and to try to understand their testimony rendered the "proceeding so fundamentally unfair that [Patel] was prevented from reasonably presenting his case." *See Hassan*, 403 F.3d at 436. Indeed, we afford the IJ "broad discretion to control the manner of interrogation in order to ascertain the truth." *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998) (internal quotation marks and citation

omitted).  In sum, we agree with the BIA's conclusion that Patel "received a full and fair hearing on the merits of his" claims.

### III

For these reasons, we deny Patel's petition for review of the BIA's decision.